ATTORNEYS FOR PETITIONER
Gregory F. Zoeller
Attorney General of Indiana

Andrew W. Swain
John D. Snethen
Timothy A. Schultz
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR RESPONDENT
Timothy J. Eifler
Walter L. Sales
Louisville, Kentucky



# In the
# Indiana Supreme Court

### No. 49S10-1402-TA-79

INDIANA DEPARTMENT OF STATE REVENUE,

*Petitioner (Respondent below),*

v.

CATERPILLAR, INC.,

*Respondent (Petitioner below).*

Appeal from the Indiana Department of State Revenue
Letter of Findings, No. 08-0333R

On Petition for Review from the Indiana Tax Court, No. 49T10-0812-TA-70
The Honorable Martha Blood Wentworth, Judge

**August 25, 2014**

**Rush, Chief Justice.**

Indiana's tax statutes expressly authorize corporate taxpayers to deduct some foreign source dividend income when calculating Indiana adjusted gross income. But Caterpillar attempted to use that same deduction to increase its Indiana net operating losses available for carryover to other tax years. We hold that the plain meaning of the Indiana tax statutes disallows Caterpillar's use of the foreign source dividend deduction outside of its legislatively authorized context. We also hold

that Caterpillar has not met its burden to show that disallowing the deduction discriminates against foreign commerce under the Foreign Commerce Clause of the Federal Constitution. Accordingly, we reverse the Tax Court's decision and grant summary judgment for the Indiana Department of State Revenue.

## Background and Relevant Tax Statutes

Three Indiana tax statutes inform our discussion: 1) the statute defining "adjusted gross income" ("AGI"); 2) the foreign source dividend deduction statute; and 3) the net operating loss ("NOL") statute. Indiana corporate taxpayers use a multistep process to calculate their taxable Indiana AGI. The calculation begins with federal taxable income, to which a taxpayer makes expressly enumerated adjustments under Indiana Code section 6-3-1-3.5(b) ("Section 3.5(b)"). Then, the taxpayer makes additional adjustments based on provisions outside of Section 3.5(b). One such provision is the foreign source dividend deduction statute. It allows a corporate taxpayer to deduct a percentage of its dividend income earned from foreign subsidiaries: "A corporation that includes any foreign source dividend in its adjusted gross income for a taxable year is entitled to a deduction from that adjusted gross income." Ind. Code § 6-3-2-12(b) (2004). After making these adjustments, the taxpayer determines how much of its income is apportioned or allocated to Indiana, based on provisions in Indiana Code section 6-3-2-2. The resulting number is Indiana AGI before the NOL deduction. Finally, a corporation may apply allowable NOL deductions, which are calculated by applying the three-step formula found in the Indiana NOL statute: "An Indiana net operating loss equals the taxpayer's federal net operating loss for a taxable year as calculated under Section 172 of the Internal Revenue Code, derived from sources within Indiana and adjusted for the modifications required by IC 6-3-1-3.5." I.C. § 6-3-2-2.6(c).

## Facts and Procedural History

This case presents the question of whether the Indiana tax statutes allow Caterpillar to increase its Indiana NOLs by deducting foreign source dividend income. Caterpillar challenges the Indiana Department of State Revenue's (the "Department's") longstanding application of the Indiana tax statutes. We granted the Department's petition for review to resolve this question and its Foreign Commerce Clause implications.

2

Caterpillar is a multinational corporation, incorporated in Delaware with its headquarters in Peoria, Illinois. It is the world's largest manufacturer of construction and mining equipment, and it operates one of its manufacturing plants in Lafayette, Indiana. From 2000 to 2003, Caterpillar owned over two hundred fifty subsidiaries, either directly or indirectly. Some of these subsidiaries were other U.S. corporations, but most were foreign companies operating outside the United States. During this time, Caterpillar received dividends from both its domestic and foreign subsidiaries.

From 2000 to 2003 ("the Loss Years"), Caterpillar deducted its foreign source dividend income when calculating its Indiana NOLs. In so doing, Caterpillar grafted Indiana's foreign source dividend deduction statute, see I.C. § 6-3-2-12, into the Indiana NOL calculation—literally. Caterpillar had to write in the deduction manually on its tax return because the NOL schedule (Schedule IT-20NOL) made no space for the foreign source dividend deduction. In this way, Caterpillar presumed to increase its Indiana NOLs by deducting foreign source dividend income from the Loss Years.

In 2004 and 2005, Caterpillar timely filed amended tax returns for 1996, 1997, 1998, and 1999 (the "Carryback Years") that included a modified AGI reduced by the NOLs carried back from the Loss Years, and sought a refund based on the amended returns. The Department partially denied the refund after it audited Caterpillar's returns filed during the Carryback and Loss Years. The Department rejected Caterpillar's insertion of the foreign source dividend deduction into the NOL calculation; reduced Caterpillar's usable Indiana NOLs by $8,309,622; and issued a partial refund to Caterpillar consistent with the Department's interpretation of the Indiana NOL statute.

On May 8, 2008, Caterpillar timely protested the Department's recalculation of its Indiana NOL deductions and partial denial of its refund. After a hearing on August 21, 2008, the Department denied the protest in a Letter of Findings dated October 10, 2008. Letter of Findings: 08-0333R, Ind. Reg. LSA Doc. No. 08-907 (Dec. 17, 2008) (see http://www.in.gov/legislative/iac/ 20081217-IR-045080907NRA.xml.html). On December 9, 2008, Caterpillar commenced an original tax appeal in the Indiana Tax Court. In its petition, Caterpillar did not seek the refunds the Department denied for the Carryback Years. But, it did appeal the Department's reduction of its

Indiana NOLs available for carryforward and use in future tax years.[1] Caterpillar moved for summary judgment on October 30, 2009, and the Department filed its own cross-motion for summary judgment on January 15, 2010. On March 28, 2013, the Tax Court rendered its decision granting summary judgment for Caterpillar and denying the Department's cross-motion for summary judgment. 988 N.E.2d 1269 (Ind. Tax Ct. 2013). The Department timely petitioned this Court for review,[2] and we granted review. Ind. Appellate Rule 63(M).

## Standard of Review

When we review a decision from the Indiana Tax Court, we extend cautious deference to the court's special expertise in Indiana tax law. Ind. Dep't of Revenue v. Miller Brewing Co., 975 N.E.2d 800, 803 (Ind. 2012). Although we exercise de novo review over all questions of constitutional and statutory interpretation, we will set aside a decision by the Tax Court only when we are "definitely and firmly convinced" the Tax Court has erred. Id. (internal quotation marks omitted); Dep't of Local Gov't Fin. v. Roller Skating Rink Operators Ass'n, 853 N.E.2d 1262, 1265 (Ind. 2006). Additionally, when we examine a statute that an agency is "charged with enforcing . . . we defer to the agency's reasonable interpretation of [the] statute even over an equally reasonable interpretation by another party." Chrysler Grp., LLC v. Review Bd. of Ind.

---

[1] The parties dispute whether the 2004 version of the Indiana NOL statute applies in this case. A non-code provision accompanying the 2004 amendments to the Indiana Code directs us to apply the 2004 version:

> (f) The following provisions apply to deductions for net operating losses that are claimed after December 31, 2003:
>
> . . .
>
> > (2) Deductions for net operating losses that were incurred in taxable years ending before January 1, 2004, and that are carried forward and deducted in taxable years ending after December 31, 2003, must be calculated under IC 6-3-2-2.5 and IC 6-3-2-2.6, both as amended by this act.

Act of Mar. 17, 2004, Pub. L. No. 81-2004, § 62, 2004 Ind. Acts 1221.

[2] The Department's petition for review also states that allowing the Tax Court's decision to stand would produce millions of dollars in lost revenue for the State. The Department's discussion of fiscal impact is entirely appropriate because "[a]ny brief may discuss the fiscal impact of the Tax Court's decision on taxpayers or government." Ind. Appellate Rule 63(J). But the petition also includes an affidavit confirming the precise magnitude of this fiscal impact, and that affidavit was not designated before the Tax Court. Caterpillar has moved to strike that affidavit as undesignated evidence. We now grant Caterpillar's motion because the Department did not designate its affidavit before the Tax Court, Ind. Trial Rule 56(C), and we may not rely upon it in reviewing the Tax Court's decision.

4

<u>Dep't of Workforce Dev.</u>, 960 N.E.2d 118, 124 (Ind. 2012); <u>Stump v. Ind. Dep't of State Revenue</u>, 777 N.E.2d 799, 802 (Ind. Tax Ct. 2002). And when reviewing summary judgment, we will affirm only when the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

**Discussion and Decision**

At its core, the resolution of this case is straightforward: The Indiana NOL statute does not reference or incorporate the foreign source dividend deduction, and the Tax Court clearly erred in holding that it did. The Department correctly recognized that the Indiana tax statutes did not authorize Caterpillar to include foreign source dividend income in its Indiana NOL calculation. We also conclude that Caterpillar has not met its burden to show the Indiana tax statutes unconstitutionally discriminate against foreign commerce.

**I. The Indiana Net Operating Loss Calculation**

"The first and often the only step in resolving an issue of statutory interpretation is the language of the statute." <u>Shell Oil Co. v. Meyer</u>, 705 N.E.2d 962, 972 (Ind. 1998). We give effect to the "'plain and ordinary meaning'" of tax statutes when the Legislature has "'spoken clearly and unambiguously,'" rather than apply canons of statutory construction or deduce legislative intent. <u>Miller Brewing Co.</u>, 975 N.E.2d at 803 (quoting <u>Sloan v. State</u>, 947 N.E.2d 917, 922 (Ind. 2011)); <u>Ind. Dep't of State Revenue v. Horizon Bancorp</u>, 644 N.E.2d 870, 872 (Ind. 1994). But if a statute authorizing a deduction is ambiguous, we must construe the deduction narrowly because "'an income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer.'" <u>INDOPCO, Inc. v. Comm'r.</u>, 503 U.S. 79, 84 (1992) (quoting <u>Interstate Transit Lines v. Comm'r</u>, 319 U.S. 590, 593 (1943)); <u>Ind. Dep't of State Revenue v. Food Mktg. Corp.</u>, 403 N.E.2d 1093, 1102–03 (Ind. Ct. App. 1980). When something is not enumerated in a statutory list it "should not be engrafted into the list by judicial interpretation." <u>Morgan Cnty. v. Ferguson</u>, 712 N.E.2d 1038, 1043 (Ind. Ct. App. 1999).

Here, we find that the Indiana NOL statute is unambiguous and thus apply the statutory terms as written without resorting to canons of construction. We also "decline [the] parties' invitations to consider extraneous evidence of legislative intent, including—but not limited to—

5

legislative history and administrative interpretations of the statute." <u>Miller Brewing Co.</u>, 975 N.E.2d at 803.

### A. Calculating Indiana NOLs

Indiana corporate taxpayers calculate Indiana NOLs by modifying their federal NOLs using a three-step process:

> [a]n Indiana net operating loss equals the taxpayer's federal net operating loss for a taxable year as calculated under Section 172 of the Internal Revenue Code, derived from sources within Indiana and adjusted for the modifications required by IC 6-3-1-3.5.

I.C. § 6-3-2-2.6(c).[3] The three steps outlined in this provision are 1) calculate the federal NOL; 2) adjust the federal NOL by applying the modifications required by Indiana Code section 6-3-1-3.5; and 3) determine the portion derived from sources within Indiana. I.C. § 6-3-2-2.6(c). None of these three steps references or incorporates the foreign source dividend deduction—which, indeed, is codified separately from the Indiana NOL statute. <u>See</u> I.C. § 6-3-2-12.[4] We thus reject Caterpillar's and the Tax Court's interpretation of the Indiana NOL statute.

### 1. Step 1: Calculate Federal NOLs.

Caterpillar's calculation of its Indiana NOLs begins with its federal NOLs. I.C. § 6-3-2-2.6(c). The Internal Revenue Code defines federal NOLs as "the excess of the deductions allowed by this chapter over the gross income." I.R.C. § 172(c) (2000 & Supp. 2003). A federal NOL deduction for foreign source dividends does not exist. Jerome R. Hellerstein & Walter Hellerstein, 1 <u>State Taxation: Constitutional Limitations and Corporate Income and Franchise Taxes</u> ¶ 4.21, 4-306 n.1373 (3d ed. 2013). Therefore, no foreign source dividend deduction enters into Caterpillar's

---

[3] The statute also provides that an Indiana NOL "includes a net operating loss that arises when the modifications required by IC 6-3-1-3.5 exceed the taxpayer's federal taxable income." I.C. § 6-3-2-2.6(d)(3).

[4] Calculating Indiana NOLs could also begin with federal taxable income, followed by adjustments for modifications under Indiana Code section 6-3-1-3.5 that exceed federal taxable income, and then a determination of the portion of the resulting NOL derived from Indiana sources. <u>See</u> Ind. Code § 6-3-2-2.6(d)(3). But these alternative steps neither reference nor incorporate the foreign source dividend deduction statute.

calculation of its federal NOLs,[5] nor does the foreign source dividend deduction make it into the Indiana NOL calculation at this step.

### 2. *Step 2: Apply the "modifications required by IC 6-3-1-3.5."*

Likewise, the second step to calculate Indiana NOLs does not incorporate the foreign source dividend deduction. Instead, the NOL statute directs Caterpillar only to the specific modifications listed in Section 3.5(b). These modifications are applied to Caterpillar's federal taxable income, and there were only six that applied to corporations under the statute in effect and applicable to the NOLs in this case:

(1) Subtract income that is exempt from taxation under this article by the Constitution and statutes of the United States.

(2) Add an amount equal to any deduction or deductions allowed or allowable [for charitable contributions and gifts] pursuant to Section 170 of the Internal Revenue Code.

(3) Add an amount equal to any deduction or deductions allowed or allowable pursuant to Section 63 of the Internal Revenue Code for taxes based on or measured by income and levied at the state level by any state of the United States.

(4) Subtract an amount equal to the amount included in the corporation's taxable income under Section 78 of the Internal Revenue Code.

(5) Add or subtract the amount necessary to make the adjusted gross income of any taxpayer that owns property for which bonus depreciation was allowed in the current taxable year or in an earlier taxable year equal to the amount of adjusted gross income that would have been computed had an election not been made under Section 168(k)(2)(C)(iii) of the Internal Revenue Code to apply bonus depreciation to the property in the year that it was placed in service.

(6) Add an amount equal to any deduction allowed [for federal NOLs] under Section 172 of the Internal Revenue Code.

I.C. § 6-3-1-3.5(b)(1)–(6). None of these six modifications mentions foreign source dividend income. In fact, Caterpillar had to go to another statutory section separate from Section 3.5(b)—

---

[5] Similarly, no deduction of foreign source dividends received occurs in the calculation of federal taxable income. Thus, for taxpayers who begin their Indiana NOL calculation with federal taxable income under Indiana Code section 6-3-1-3.5, no such deduction enters into the Indiana NOL calculation at this step.

indeed, to a different Code chapter—for guidance on when foreign source dividends may be deducted, Indiana Code section 6-3-2-12. Neither the Indiana NOL statute nor Section 3.5(b) make any reference to that section. Thus, the foreign source dividend deduction does not factor in when modifying federal NOLs under Section 3.5(b) and is not incorporated into this step of the Indiana NOL calculation.

### 3. Step 3: Calculate NOLs "derived from sources within Indiana."

Finally, Caterpillar may only deduct that portion of its Indiana NOLs which are "derived from sources within Indiana." The Indiana NOL statute explains how to calculate that portion:

> The amount of the taxpayer's net operating loss that is derived from sources within Indiana shall be determined in the same manner that the amount of the taxpayer's adjusted income derived from sources within Indiana is determined under section 2 of this chapter for the same taxable year during which each loss was incurred.

I.C. § 6-3-2-2.6(d)(2). "Section 2 of [the] chapter," in turn, describes Indiana's statutory system of apportionment and allocation of AGI. I.C. § 6-3-2-2. When applied to Caterpillar's NOLs, these statutes apply only to allocate and apportion Caterpillar's modified federal NOLs. And because we have already explained that foreign source dividend income is not deducted in calculating federal NOLs, no such deduction affects the allocation and apportionment of modified federal NOLs. The foreign source dividend deduction does not make it into the Indiana NOL calculation at this final step, either.

## B. The Tax Court's Holding

The Tax Court's holding treats an Indiana NOL as the mirror image of Indiana AGI by finding that the Indiana NOL statute incorporates the foreign source dividend deduction. The court's opinion acknowledged that "[t]he term 'adjusted gross income' does not appear in the Indiana NOL [s]tatute," 988 N.E.2d at 1272, but through a string of inferences, the decision superimposed all adjustments to Indiana AGI—including the foreign source dividend deduction—onto the Indiana NOL calculation. By the Tax Court's opinion, the term "modifications required by IC 6-3-1-3.5" found in the NOL statute is shorthand for every adjustment to AGI scattered throughout the Indiana tax statutes. And because the Indiana NOL statute contains the phrase "modifications required by IC 6-3-1-3.5," then according to the Tax Court's decision, the "plain

8

language of the Indiana NOL [s]tatute itself" incorporates all Indiana AGI adjustments. 988 N.E.2d at 1272. The Tax Court attempted to reinforce its conclusion when it looked at the legislative history of the Indiana NOL staute.

The Tax Court's interpretation is not consistent with the plain meaning of the Indiana NOL statute. The phrase "modifications required by IC 6-3-1-3.5" does not incorporate by reference every modification to Indiana AGI found anywhere in the Indiana tax statutes. Rather, that phrase means what it says—the "modifications required by [Section 3.5]." The General Assembly repeated this phrase four times throughout the Indiana NOL statute, as if to assuage any uncertainty about which modifications it had in mind. We must assume that the General Assembly intentionally chose to define Indiana NOLs with reference only to Section 3.5 and not all adjustments to AGI because "legislatures make the tax statutes and courts enforce them *as written.*" Ind. Dep't of State Revenue v. Endress & Hauser, Inc., 404 N.E.2d 1173, 1178 (Ind. Ct. App. 1980) (emphasis added). "[W]e may not extend the definition of [Indiana NOLs] by an interpretation for which there is no verbal basis in the Act." Id. Because Section 3.5 makes no reference to foreign source dividends, the plain meaning of the Indiana NOL statute prevents us from inferring what is not there explicitly. See Ferguson, 712 N.E.2d at 1043 (stating that "other items or words" not enumerated in a statutory list it "should not be engrafted into the list by judicial interpretation"). If the General Assembly had intended corporate taxpayers to include every adjustment to AGI in the NOL calculation, it would have said so.

Affirming the Tax Court's interpretation would have consequences beyond the NOL treatment of foreign source dividend income and would affect more than just corporate taxpayers. Under the Tax Court's interpretation, all Indiana taxpayers—both corporations and individuals— could use every AGI adjustment listed outside of Section 3.5 to calculate Indiana NOLs. That expansive interpretation reinforces our belief that such an interpretation contravenes the plain meaning of the NOL statute. Cf. Loparex, LLC v. MPI Release Techs., LLC, 964 N.E.2d 806, 818 (Ind. 2012) ("Statutes are to be read as a whole."). Individual deductions for unemployment compensation, I.C. § 6-3-2-10, and deductions for federal employee paid leave, I.C. § 6-3-2-11, along with corporate deductions for export income, I.C. § 6-3-2-13, are only three examples of deductions that reduce AGI but are not among the "modifications" listed in Section 3.5. Hoosier taxpayers could also include these deductions in their Indiana NOL calculations under Caterpillar's

9

and the Tax Court's interpretation.  Additionally, finding exact symmetry between Indiana AGI and Indiana NOLs is inconsistent with federal practice, which does not allow every modification to federal taxable income to apply in calculating federal NOLs. See I.R.C. § 172(d) (listing all modifications to deductions in the federal NOL calculation). We will not interpret the Indiana tax statutes any differently.

In most cases, we exercise "cautious deference" to the Tax Court's opinion because we recognize its unique expertise in Indiana tax law. Miller Brewing Co., 975 N.E.2d at 803. But when the plain meaning of the statute is unambiguous, we are in no worse position than the Tax Court to apply the statute as written, especially when the Tax Court's conclusion interpolates "extraneous evidence of legislative intent," id., as it did here. Thus, we hold that the Tax Court clearly erred when it adopted a false symmetry between Indiana AGI and Indiana NOLs, and we decline Caterpillar's effort to apply the foreign source dividend deduction to its NOL caclulations.

## II.  Foreign Commerce Clause

Caterpillar also argues that the Indiana tax statutes facially discriminate against foreign commerce by disallowing the foreign source dividend deduction in the Indiana NOL calculation, but incorporating the federal domestic source dividend deduction in the same calculation. We review a statute's constitutionality de novo, but "[a]ll statutes are presumptively constitutional, and the court must resolve all reasonable doubts concerning [a] statute in favor of constitutionality." UACC Midwest, Inc. v. Ind. Dep't of State Revenue, 629 N.E.2d 1295, 1299 (Ind. Tax Ct. 1994) (citing N. Ind. Bank & Trust Co. v. State Bd. of Fin., 457 N.E.2d 527, 529 (Ind. 1983)). Caterpillar, as the party challenging the constitutionality of the statutes, "bears the burden to overcome the [constitutional] presumption." Mid-Am. Mailers, Inc. v. State Bd. of Tax Comm'rs, 639 N.E.2d 380, 386 (Ind. Tax Ct. 1994) (holding that taxpayer failed to show that a personal property tax violated the Federal Commerce Clause). We hold that Caterpillar has failed to carry this burden.

Caterpillar rests its constitutional argument upon Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin., 505 U.S. 71 (1992), which involved the state tax treatment of foreign source dividend income in calculating taxable income, not NOLs. In Kraft, the United States Supreme Court held that Iowa facially discriminated against foreign commerce by allowing corporate

taxpayers a deduction for domestic source dividends but disallowing a comparable deduction for foreign source dividends. Id. at 82. Yet the constitutional defect at issue in Kraft is absent from Indiana's tax scheme because Indiana allows corporate taxpayers the very foreign source dividend deduction in calculating AGI that the United States Supreme Court found lacking in Kraft. See I.C. § 6-3-2-12. Kraft does not address how treatment of foreign source dividend deductions apply to NOLs, and we decline Caterpillar's invitation to extend Kraft's holding to the NOL context. At least one other jurisdiction has wrestled with the same question and found no unconstitutional discrimination. Colgate-Palmolive Co. v. Fla. Dep't of Revenue, 988 So. 2d 1212, 1224 (Fla. Dist. Ct. App. 2008). The only authority that Caterpillar cites to the contrary is an unpublished decision by the Maryland Tax Court from 2001, Kraft Gen. Foods, Inc. v. Comptroller of the Treasury, No. 98-IN-OO-0353, 2001 WL 699558 (Md. Tax Ct. June 8, 2001), which Colgate-Palmolive considered, but found unpersuasive, 988 So. 2d at 1221–22. Caterpillar simply has not borne its burden of overcoming the tax statutes' presumption of constitutionality.

### Conclusion

Caterpillar may not deduct foreign source dividends when calculating Indiana NOLs—a conclusion compelled by the plain meaning of the Indiana tax statutes. And Caterpillar has not carried its burden of proving that this conclusion violates the Foreign Commerce Clause. Therefore, we reverse the Tax Court's judgment and remand with instructions to grant summary judgment to the Department and deny summary judgment to Caterpillar.

Dickson, Rucker, David, and Massa, JJ., concur.

11